Appears that Mr. Tillotson and Mr. Carrington each have their own, but is it one U.S. attorney? Yes. That's one U.S. attorney. All right. Who wants to go first? Your Honor, I guess I'd like to go first given, as the calendar indicates, the Court has a different preference. Given what? First on the calendar, so why don't I go first? Well, don't you think ladies ought to go first? Well, I can certainly stand down if the Court has a preference, and I'm always willing to be gentlemanly. I just don't want to ---- Ladies don't always like to go first when sometimes what's going first. She might like you to go first. All right. And then see how it goes for you. I'll take that as a hint to go first then. She'll catch you if you fall. There's a long way down, Your Honor. May it please the Court, counsel, and particularly Judge Noonan in San Francisco, my name is Russell Victor Leonard from the unassisted federal public defender in Tacoma, and I'm here on behalf of Robert Charles Tillots. This is an extraordinarily rare event. The district court judge's order in this matter is more extraordinary than the record presented to this court in the Crawford case and wholly dissimilar from the King case. Can I ask you one thing, just because the two of you are together, because you do have similar issues, but you weren't tried together. That's right. So you're separate cases. So what you might want to, both of you might want to do, since you focused, I think, correctly on the, because you're going right to the Crawford and the King issue, you have to have extraordinary circumstances. And since, you know, you're in it together in a way, but you obviously, you want to be more extraordinary than the other person if that's the case. So highlight the facts of your case, even perhaps comparatively to the other case. Certainly, Your Honor. It goes without saying that there are, as the court has alluded to, facts that are in common between these two cases, and I don't want to by moving past them to in any way suggest that they aren't extraordinary. And I guess my point, I'll make it very briefly, is that these are more extraordinary than Crawford in the sense that we have here a district court judge sua sponte raising the prospect of this being a recall of the mandate by this court, recognizing that it's for this court to decide, but also transferring this case to this court in his order below. An unusual way of presenting this issue to the court, which the appellants here have adopted by seeking a certificate of appealability on that issue. It's even more extraordinary than Crawford in that way. In Mr. Tillett's case, there's the additional extraordinary element of Mr. Tillett's raising Apprendi at the time of his first 2255 motion. And in fact, Judge Ryan points this out as an additional potential extraordinary circumstance that may warrant recall of the mandate by this court in this case. That extraordinary circumstance is a distinction certainly from Crawford. There's no indication that that's true. In Crawford, though, it was, if you want to say Apprendi and Blakely, in Crawford it was Blakely, right? But it was two days after, in Crawford, we noted that the Supreme Court decided Blakely two days after that decision within the window of time that the defendant could have filed a timely petition for rehearing, thus obviating the need for a motion to recall the mandate. Do you – how do your facts compare to that? You mentioned Apprendi, but was it – it's not just switching Apprendi and Blakely. Were you in that same window? Your Honor is correct in pointing out that, obviously, Blakely, the time in which Crawford made his request to recall the mandate is different from Mr. Tillich. Mr. Tillich's case had been final well before the Crawford litigation. So the timing is relevant, though, as an analogy to Crawford that this case is more  In the case of Apprendi, the defendant had made a request to Mr. Tillich to use 2255 for relief based on Apprendi. And that 2255, the first 2255 was denied by Judge Bryan. Judge Bryan outlines this procedural posture in his order at 109 through 111 in the case of Apprendi.    And that 2255, the first 2255 was denied by Judge Bryan. And that makes the statement, future panels will necessarily evaluate the existence of extraordinary circumstances based on the facts of their individual cases. Now, what you have here is a judge, when the original sentence was imposed, that expressed great concern about the justice of that sentence. I mean, I've got his exact words. Then when it came back to him, he's – you know, you've got the colloquy. And he just – he made a very strong, in my mind, heartfelt plea, imploring the court of appeals to recall the mandate. Huh? I agree with you. Has anybody else ever done that? I've searched the cases, Your Honor, and I have not seen ever anything that is remotely similar. Is that extraordinary? It is extraordinary. All right. And it's more extraordinary than Crawford. Why do you need anything more than that? Well, we have more than that, Your Honor, if the panel – if this panel decides that there is need for more. But I agree with Your Honor that it is an extraordinary thing indeed that not only at the sentencing, but then in the judge's order of November of 2005, the judge underlines how he had explicit reservations, how this injustice unfolded before him in his courtroom, and that he now implores the court, sua sponte, on his own. Well, I think you're preaching to the choir there, but maybe you ought to preach to this choir, too. I like a little good music once in a while. But here are my concerns, obviously, in terms of that. On the extraordinary circumstances, ever since I've been on the federal bench, I've heard federal district judges rail about the federal guidelines and how it takes away discretion and how they had to give all these long sentences that they didn't want to give. I'm also concerned with the finality of judgments. And why wouldn't practically everyone that got a long judgment be able to come in here and say, you know, 12 years, 16 years, however many years later, you know, I served this amount of time, now reduce it? That's a great question, Your Honor. What differentiates this case is the judge made these explicit comments at sentencing. Mr. Tillits objected to the guidelines at the time of his sentence. That's not something that every defendant does, particularly at that time when the guidelines had been viewed and were presumptively constitutional by everyone involved in the litigation. The objections may have been inartful, but they were objections nonetheless. Mr. Tillits also, again, raised these Booker-style issues in his post-conviction filings. The disparity in this case is really enormous and can be counted in decades of a man's life, not simply months. And we've outlined those disparities in our briefing, and they cannot be accounted for by rational or usual circumstances, whether it's plea bargaining or 5K, 1.1 considerations. There are a whole host of extraordinary circumstances here, among the most extraordinary being Judge Bryan's order that not only reaffirms his explicit reservations at the time of sentencing, but implores this Court to recall its mandate. Unless the Court has further questions. I'd like to save a minute. I'd like to save a minute. Thank you. Ms. Bruner. Good morning. May it please the Court, my name is Helen Bruner, and I'm here today to represent the United States. Let me go immediately to the comments that Judge Bryan made, both at sentencing for Mr. Tillots and in his order that is the subject of this appeal. And I want to do that in part because I think there are differences between Mr. Carrington and Mr. Tillots as well. And if one looks at the comments at sentencing of Mr. Tillots, one sees that he is not really saying that he would give a lesser sentence. In fact, all he is saying to Mr. Tillots is that I once ruled that the guidelines were contrary to the U.S. Constitution. And he does this in response to Mr. Tillots's long-winded recitation of the fact that he found some citation related to the sentencing guidelines that somehow dealt with fish and wildlife law. And then the judge goes on to sentence Mr. Tillots. But I also want to focus on the comments of Judge Bryan. Well, are you saying that at Mr. Tillots's original sentencing that he – while he said that, you know, he had issues with the guidelines, that he didn't – that he didn't say he wanted to give them a lesser sentence? He did not. The language says at its excerpts of record 67, and it says, It may interest you to know, Mr. Tillots, that I ruled in this Court a long time ago that it was my opinion that these guidelines were contrary to the U.S. Constitution. That issue has been laid to rest contrary to my view by the United States Supreme Court, so these guidelines, in spite of your view on the legality of them and my view of it, they are part of the law of the land and by me and I must follow them. So you're saying that his first statement of – that he wished he could give them less was when he was back on the habeas or the Ritz? That is correct, Your Honor. And I point that out because there is a distinction. Yeah, but implicit in what he said. There's some implication there that, you know, that these sentences are harsh. There's an implication there. Absolutely, Your Honor. I would not dispute that for a moment. Okay. But the point is this. In Mr. Tillots' case, he makes an expression of his prior rulings on the unconstitutionality of the guidelines. In Mr. Carrington's case, he makes a stronger statement about the harshness of the drug guidelines. Now, should Mr. Tillots' case, therefore, be distinguished from Mr. Carrington's? Should Mr. – should Judge Bryan's comments now in this order mean that every sentence that Judge Bryan has imposed on at least drug defendants should be backed before this Court on a motion to recall the mandate? Should the fact that any judge has chafed under the guidelines – We don't have that issue before us, do we? You do not, Your Honor. If this Court finds – sorry. No, that's all right. I'm glad you interrupted me because I pulled my thought back. I – my point is simply, Your Honor, if we find in this case where – in Mr. Tillots' case, the conviction has been final for six years, if the judge's statement is sufficient or some version of it or perhaps some expression at some point in some case is sufficient, then we really have no finality here. This Court in – So you're saying there's a lot of – he's saying this is – his case is extraordinary. You're saying that there's a lot of cases that fall into the category where the courts were upset with the guidelines or felt that they were harsh and that that would entitle all of those defendants to come back if we're to have some even-handedness of sentences. Yes, Your Honor. I mean, in my own experience – But what's the plus that needs to be here to be extraordinary sentences? I think the difference here is that the timing in Crawford makes it extraordinary and makes it different. The timing for Mr. Tillots certainly is different in that fashion. Mr. Tillots, and let me correct the record in that regard, Mr. Tillots, his conviction became final in March of 2000 when the 90-day period for filing of a petition for certiorari expired. He filed that petition for certiorari in June of 2000, and the Supreme Court denied cert in October of 2000. Not clear whether or not they actually denied it on the record or because it was untimely. But it was untimely, and it was beyond even the 60-day additional time period. We don't know why. We don't know why. They get thousands and thousands and thousands. Exactly. And they just take up a few of them. And which ones they take up is a mystery sometimes, you know. I think I know the answer, but it's a secret that's locked in my heart. Ms. Brown, can I ask you a question? You certainly may, Your Honor. You know, this is not likely to happen. And I understand you're worried about the precedential effect. But you make it a precedent by arguing it. You could have acquiesced with Judge Bryan, and if we decide against you, you could acquiesce too and not make a big thing out of it. Here's a man, a judge, following his conscience, telling you it's wrong of him to keep a man in prison illegally and unconstitutionally. You must have the same feeling. It's wrong to keep somebody under an unconstitutional statute. And if we find some little way of once in a while letting somebody out who's there illegally, we should take advantage of it. Why not? Your Honor, on putting those terms, I would certainly say that if the Supreme Court declared the drug guideline, the drug statute unconstitutional, we could not keep Mr. Carrington or Mr. Tillits in custody any longer. The problem is neither this Court nor the Supreme Court has said Blakely or Booker apply retroactively to cases where the convictions are final. So at what point do we have to do that? We've got Cruz and the other circuits. They're all saying that Booker's not retroactive. That's correct. But we haven't heard from the Supreme Court. So we're waiting on that. But then we've got to deal with Crawford and King. We've got to deal with that. We're dealing with that code section about recalling the mandate. Well, that may well be. But let me also point out that Judge Bryan, in his opinion, really hits the nail on the head when he says, yet because of the retroactivity rules, defendants serving unconstitutional sentences, and by that he means, obviously, as a result of the Booker decision, are offered no relief, no remedy, no justice. Now, I would just argue, Your Honor, there is really nothing extraordinary about Mr. Tillits and Mr. Carrington. But you've got the provision on recalling the mandate, you know, where there are extraordinary circumstances. That's in there. And that's my point. There is nothing extraordinary about the circumstances that Mr. Tillits or Mr. Carrington find themselves in. And if this Court looks to ---- You don't think that a judge who has a sentence that's on his conscience for all these years and feels strongly about it, to reach out and implore our court to give him another chance to look at this, you don't think that's an extraordinary circumstance? I do. I do. How many judges are going to do that? Your Honor ---- How many of them have got the guts to do it? With due respect, and I do respect Judge Bryan ---- Not many of them. That's right. And, you know, once we lose our ---- the guidance of justice and we worry about these floodgates opening, then we're ---- the words that come to me are not for publication, but it's not right. And, you know, I've been on the Court for I don't know how long, maybe four decades, and I hear these floodgates arguments all the time. And I'll tell you, my feet are still dry. I've never been in a flood yet. So people make those arguments, but you're not going to ---- I don't ---- to me, this is extraordinary. What this judge said and how he feels about it and how it's been tugging at him all these years, pretty extraordinary. I see my time has expired. He takes an oath, you know, to do equal right. Takes an oath to do equal right and justice. That's what he takes an oath. And, Your Honor, I don't ---- Yeah. We have ten more minutes on the other one. I will. Thank you, Your Honor. All right. We have ten more minutes. Can I venture a suggestion? We understand the government's argument. Unless there's something very different about Carrington, we need very little on the other one. Yeah. What do you want to say? Well, Your Honor, I'd just like to take my one minute to address Judge Callahan's question about the record in the Tillett's case of the original sentencing. Mr. Carrington's case happened in 1990, and you have the Court's comments related to Carrington. Mr. Tillett's sentencing was eight years later in 1998. And as you can see, by clear implication, the judge is indicating that he had found the guidelines unconstitutional. He disagreed with the guidelines. But as a man of the law, a man sworn to uphold his duty, he must follow those guidelines given the Supreme Court precedent on that. Nonetheless, he is clearly, through his words, expressing his lament at having to follow mandatory guidelines. And, indeed, the remainder of that quote, and I'm referring to ER 67 and 68, has Mr. Tillett's raising a question. What was that case? What was that case you relied on? And the judge said, it's past history now, and it's of no assistance to us. The judge clearly indicating that he must follow the law even though he does not wish to. So, without that, I would also note that I haven't seen any floodgates as a result of the Crawford decision. I don't expect any floodgates to be opened by any reasoned decision of this Court as it relates to recall of a mandate in any case. Thank you.
judges: Pregerson, Noonan, Callahan